UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PHYLLIS A. WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 03-1692 (RBW) |
| | ) | |
| JOHN W. SNOW, | ) | |
| Secretary of the Treasury, Internal Revenue Service, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This matter comes before the Court on the defendant's motion for summary judgment. Defendant's Motion for Summary Judgment at 1. The plaintiff, who is proceeding pro se in this matter, has brought suit against her former employer, the Internal Revenue Service ("IRS"), for racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16 (2006). Amended Complaint ("Am. Compl.") ¶ 1. Currently before the Court are a Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment ("Def.'s Mem."), the Defendant's Statement of Material Facts Not in Genuine Dispute ("Def.'s Facts"), defendant's exhibits A through GG ("Def.'s Ex."), Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp'n"), plaintiff's exhibits 1 through 21 ("Pl.'s Ex."), and Defendant's Reply to Plaintiff's Opposition to His Motion for Summary Judgment ("Def.'s Reply"). For the reasons set forth below, the Court will grant the defendant's motion.

### I. Factual Background

The plaintiff is an African American female.  Pl.'s Opp'n at 9.  The plaintiff began working for the agency defendant on June 1, 1999, as a contract employee.  Id.  She was assigned to the Counsel Document Review ("CDR") team in the Office of the Associate Chief Counsel.  Def.'s Ex. A (Plaintiff's Deposition ("Pl.'s Dep.") I) at 47-48, 54.  The CDR team was divided into three sub-teams: the Redaction Team, the Taxpayer Locator Team, and the Document Control Team.  Id. at 67.  The Redaction Team reviewed documents that would be publicly released and redacted any information that was privileged or could identify the taxpayer.  Def.'s Ex. J (Redaction Team Position Description).  The Taxpayer Locator Team reviewed documents sent to taxpayers to ensure that each document was sent to the correct taxpayer.  Def.'s Ex. K (Taxpayer Locator Team Position Description).  The Document Control Team managed data entry and filing.  Def.'s Ex. A (Pl.'s Dep. I) at 58.  As a contract employee, the plaintiff worked with the Taxpayer Locator Team.  Id. at 67-68.

In September 1999, the plaintiff applied for a term position working directly for the IRS as a paralegal specialist.  Pl.'s Opp'n at 9.  The plaintiff was informed that she was not among the best qualified candidates, and was not offered the job.  Id.  The four individuals hired by the defendant, three Caucasians and one African American, included three other contract employees with whom the plaintiff had been working.  Id. at 9-10.  The plaintiff then filed an administrative complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that she was not selected for one of the positions due to racial discrimination.  Id. at 10.

The defendant subsequently offered the plaintiff the position, and after accepting it the plaintiff did not further pursue her claim with the EEOC.  Id.  The plaintiff was hired for the

position on October 25, 1999, and soon thereafter was transferred to the Redaction Team. Id. The other recently hired paralegals remained with the Taxpayer Locator Team, and were never transferred. Id. The plaintiff was transferred back to the Taxpayer Locator Team in December 2001. Def.'s Ex. B (Pl.'s Dep. II) at 96-97. On June 2, 2002, the plaintiff was again transferred to the Redaction Team. Pl.'s Opp'n at 11.

During her employment with the IRS, the plaintiff sought the assistance of the National Treasury Employees Union ("NTEU"). Id. at 10. Presumably with its assistance, the plaintiff arranged meetings among employees, management, and union officials to address issues concerning allegedly disparate treatment regarding, among other things, bonuses, evaluations, and time and attendance requirements. Am. Compl. ¶ 30.

The plaintiff received three performance evaluations during her tenure at the IRS. Def.'s Ex. O (First Performance Evaluation); Def.'s Ex. P (Second Performance Evaluation); Def.'s Ex. V (Final Performance Evaluation). She was given an overall evaluation of "Exceeds Fully Successful" on the first two evaluations, which encompassed October 1999 through April 2001 and May 2001 through September 2001 respectively. Def.'s Ex. O (First Performance Evaluation); Def.'s Ex. P (Second Performance Evaluation). However, between her second and third formal evaluations, the plaintiff was twice informed that the quality of her work performance was declining. Def.'s Ex. Q (Mem. from June 7 meeting); Def.'s Ex. T (Mem. from July 16 meeting); Def.'s Ex. A (Pl.'s Dep. I) at 157-58, 160; Def.'s Ex. B (Pl.'s Dep. II) at 54-55. In both instances, the plaintiff responded with memoranda refuting her alleged performance deficiencies and claiming that her superiors were retaliating against her for her union activity. Def.'s Ex. R (Pl.'s Rebuttal Mem. to June 7 Mem.); Def.'s Ex. U (Pl.'s Rebuttal Mem. to July 16

Mem.).  In the plaintiff's third and final performance evaluation, which covered the period of October 2001 through September 2002, she received an evaluation of "Unacceptable."  Def.'s Ex. V (Final Performance Evaluation).

On July 23, 2002, the plaintiff contacted an EEOC counselor, alleging that the accusations of poor performance, along with her reassignments and denied transfer requests, were retaliation for the filing of her 1999 EEOC complaint and her union activities.  Def.'s Ex. Y (EEO Counselor's Report).  The counselor issued a Notice of Final Interview on August 21, 2002, informing the plaintiff that she had 15 days to file a formal administrative complaint based on her allegations of retaliation.  Def.'s Ex. Z (August 21 Notice of Final Interview).

On September 6, 2002, the plaintiff was informed that her employment would be terminated.  Def.'s Ex. AA (Union Grievance).  In response to this notice, the plaintiff sent an email on September 9, 2002, to her union representative, Channing Horton, informing him of her termination and asserting that it was the product of discrimination and retaliation.  Pl.'s Ex. 4 (Horton Email Chains).  On September 25, 2002, Horton filed a grievance on her behalf, claiming that the defendant's failure to extend her employment was discriminatory based on race and in retaliation for her earlier union activities.  Def.'s Ex. AA (Union Grievance).  However, the plaintiff contends that she did not instruct her representative to file this grievance on her behalf.  Pl.'s Ex. 3 (Pl.'s Affidavit).  On October 17, 2002, the plaintiff again consulted an EEOC counselor, alleging that her termination and "Unacceptable" performance evaluation were discriminatory and retaliatory.  Def.'s Ex. BB (Complainant's Intake Questionnaire).  The plaintiff's termination took effect on October 18, 2002; she was the only term paralegal on the CDR team whose term of employment was not extended.  Am. Compl. ¶ 21.

The plaintiff's union representative withdrew the plaintiff's negotiated grievance on November 8, 2002. Def.'s Ex. CC (Horton Email). On November 14, 2002, the plaintiff's EEOC counselor then issued a notice of final interview regarding the unfavorable evaluation and termination claims, informing the plaintiff of her right to file a formal administrative complaint within 15 days. Def.'s Ex. DD (November 14 Notice of Final Interview).

On December 2, 2002, the plaintiff filed a formal administrative complaint with the defendant challenging her termination. Def.'s Ex. EE (Pl.'s Administrative Complaint to the IRS). On January 22, 2003, the defendant wrote the plaintiff a letter accepting the plaintiff's complaint. Def.'s Ex. FF (Complaint Center's Acceptance Letter). This letter specified that the issue which the defendant would investigate was: "Whether the [plaintiff] was discriminated against . . . when she was terminated from the position of Paralegal Specialist on October 18, 2002." Id. The letter further stated:

> If you disagree with the issue, please notify me in writing within 15 days of the date of this letter. Please be clear and concise in your response. If no response is received, I will assume that you agree with the issue and will proceed with the investigation of the complaint.

Id. On April 25, 2003, the defendant issued a letter dismissing the plaintiff's administrative complaint. Def.'s Ex. GG (Complaint Center's Dismissal Letter). The plaintiff subsequently filed her complaint in this Court.

The plaintiff alleges in this action that the defendant discriminated against her based on her race, and retaliated against her both because of her union activites and her prior accusation of racial discrimination in 1999. Am. Compl. ¶¶ 25-31. Specifically, the plaintiff alleges that she "applied for and was continuously denied employment opportunities in the form of details,

transfers, or promotions," yet these opportunities were granted to her Caucasian coworkers.  Id. ¶ 26.  The plaintiff further alleges that her several reassignments between the Redaction Team and the Taxpayer Locator Team were discriminatory, and that she received discriminatory treatment in assignments from her Caucasian supervisor while assigned to the Redaction Team.  Id. ¶¶ 8, 15-17.  The plaintiff also alleges that her "Unacceptable" performance evaluation was a discriminatory and an act of retaliation.  Id. ¶ 31.  Finally, the plaintiff alleges that her employment was terminated due to discrimination and retaliation.  Id. ¶ 29-30.

Moving for summary judgment, the defendant asserts that the plaintiff failed to properly exhaust all administrative remedies for claims of discrimination other than for her termination.  Def.'s Mem. at 4.  The defendant further asserts that the plaintiff's termination claim is barred by her prior election to seek resolution of the claim through the agency's negotiated grievance procedure.[1]  Id. at 8.

## II.  Standard of Review

Summary judgment is generally appropriate when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is generally understood that when considering a motion for summary judgment a court

---

[1] The defendant also argues that the plaintiff cannot establish a prima facie case of race discrimination or retaliation, and that the defendant had legitimate, nondiscriminatory reason for its actions.  Def.'s Mem. at 11, 14-15.  Concluding that the defendant's motion should be granted on other grounds, the Court will not address these arguments.

must "draw all justifiable inferences in the nonmoving party's favor and accept that nonmoving party's evidence as true." Greene v. Amritsar Auto Servs. Co., 206 F. Supp. 2d 4, 7 (D.D.C. 2002) (citing Anderson, 477 U.S. at 255). The nonmoving party must establish more than "[t]he mere existence of a scintilla of evidence in support of [his] position." Anderson, 477 U.S. at 252. The District of Columbia Circuit has noted that the nonmoving party may not rely solely on mere conclusory allegations. Greene v. Dalton, 164 F.3d 671, 675 (D.C. Cir. 1999). Thus, "[i]f the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

## II.   Legal Analysis

The defendant argues that the plaintiff failed to exhaust her administrative remedies for all claims except her termination claim. Def.'s Mem. at 4. The defendant further argues that the plaintiff's termination claim is barred by her prior election to participate in its negotiated grievance procedure. Id. at 8. The Court will examine each of these arguments in turn.

### (A) Exhaustion of Administrative Remedies

Federal law requires the EEOC to issue regulations governing the filing and processing of federal employees' discrimination complaints. 42 U.S.C. § 2000e-16(b) (2006). Under these regulations, an aggrieved employee "must first consult a Counselor" within 45 days of the alleged discriminatory act. 29 C.F.R. § 1614.105(a). If informal counseling is unsuccessful, upon its conclusion the employee has 15 days to file a written administrative complaint with the allegedly discriminatory agency. Id. § 1614.106(a)-(c). The agency has 180 days to investigate the complaint. Id. § 1614.106(e)(2). The complainant may amend the complaint any time during the investigation. Id. § 1614.106(d). Upon notice of the conclusion of the agency's

investigation, the complainant has 30 days to request a hearing before an EEOC administrative judge, or to request a final decision from the agency.  Id. § 1614.108(f).  A complainant may file a civil action in federal court only after receipt of an adverse final decision from the agency or the EEOC, or after a formal complaint has been pending before the agency or the EEOC for at least 180 days.  42 U.S.C. § 2000e-16(c) (2006); 29 C.F.R. § 1614.407.

The above "short deadlines" are construed by the Supreme Court as Congress' intent "to encourage the prompt processing of all charges of employment discrimination." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002) (quoting Mohasco Corp. v. Silver, 447 U.S. 807, 825 (1980)) (internal quotation marks and citation omitted). Therefore, the filing of a complaint which does not adhere to these procedures must be dismissed, as the Court must demand "strict adherence to the procedural requirements specified by the legislature."  Id., at 108 (quoting Mohasco, 447 U.S. at 826) (internal quotation marks and citation omitted); Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997) ("Complainants must timely exhaust these administrative remedies before bringing their claims to court." (citation omitted)).

A complainant must exhaust all administrative remedies for each discrete discriminatory act for which she seeks relief.  Morgan, 536 U.S. at 113.  The Supreme Court has held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."  Id.  A complainant may not combine a series of acts into one claim of discrimination if a complaint alleging any one of the acts on its own would be untimely.  Id. at 113-14.  Thus, when a complainant files an administrative complaint, it may only allege discriminatory acts about which the complainant sought consultation with the EEOC that

concluded within the previous 15 days, and which occurred within 45 days prior to the consultation with the EEOC.[2]  Id.; 29 C.F.R. §§ 1614.105(a), 1614.106(a)-(c).

Here, the plaintiff filed her only administrative complaint with the defendant on December 2, 2002.  Def.'s Ex. EE (Pl.'s IRS Administrative Complaint).  The plaintiff filed the complaint in this action after receiving a final interview notice letter from the EEOC dated November 14, 2002.  Id.  This notice only referenced her termination and her "Unacceptable" performance evaluation.  Def.'s Ex. DD (November 14 Final Interview Notice).  All of the defendant's other alleged discriminatory acts — the plaintiff's reassignments, denial of transfers and promotions, and discriminatory treatment by a supervisor — are discrete acts that, under Morgan, cannot be combined with the unfavorable evaluation and termination claims.  See 536 U.S. at 114 ("Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. . . . [A plaintiff] can only file a charge to cover discrete acts that 'occurred' within the appropriate time period." (footnote omitted)).  Furthermore, the plaintiff's administrative complaint was interpreted by the defendant as a complaint of discriminatory termination only.  Def.'s Ex. FF (Complaint Center's Acceptance Letter).  The defendant explicitly informed the plaintiff that absent the plaintiff's objection, her termination would be the only issue which the defendant would investigate.  Id.  The defendant now argues that the plaintiff exhausted her remedies only with respect to the act of termination, and that her claims arising from other acts therefore cannot be maintained.  Def.'s Mem. at 4.

The plaintiff's sole response to the defendant's argument is that she was issued a right-to-

---

[2] However, even if claims of prior acts are untimely, the complainant may still introduce evidence of these acts to prove an employer's discriminatory intent for acts which occurred within the limitations period.  Morgan, 536 U.S. at 113.

sue statement by the defendant, and she properly filed a claim in this Court within 90 days. Pl.'s Opp'n at 3-6. While this is correct, the right-to-sue letter issued by the defendant did not grant blanket authority to sue for any claim under the sun. The right-to-sue notification is only authorization to appeal the defendant's dismissal decision, and the defendant only investigated and dismissed claims arising from the act of termination. Def.'s Ex. GG (Complaint Center's Dismissal Letter). Accordingly, the plaintiff has not exhausted her administrative remedies as to any other claims. Therefore, all claims arising from acts other than the plaintiff's termination must be dismissed.

### (B) Negotiated Grievance Procedure

The EEOC's regulations forbid a complainant from pursuing the same matter through the EEO process and a "negotiated grievance procedure" with a union. 29 C.F.R. § 1614.301(a). Thus, a complainant who files an administrative complaint with an agency may not subsequently file a grievance on the same matter with a union, and a complainant who has filed a grievance may not subsequently file a formal complaint on the same matter with an agency. Id. An administrative complaint filed with an agency after the initiation of negotiated grievance procedure on the same matter with a union must be dismissed by the agency. Id. § 1614.107(a)(4). And initiation of the negotiated grievance procedure is an "irrevocable election of remedies," regardless of whether the complainant ever takes any action after the initial step of filing the administrative complaint. Guerra v. Cuomo, 176 F.3d 547, 548-49 (D.C. Cir. 1999).

Here, the plaintiff's union representative, Channing Horton, filed a grievance on her behalf on September 25, 2002. Def.'s Ex. AA (Union Grievance). However, the plaintiff alleges that she did not instruct her union representative to do this. Pl.'s Ex. 3 (Pl.'s Affidavit).

Subsequently, the plaintiff filed an administrative complaint with the IRS on December 2, 2002. Def.'s Ex. EE (Pl.'s Administrative Complaint to the IRS). The plaintiff argues that the union grievance did not bar the filing of her administrative complaint because (1) she did not file the grievance, but rather it was filed by her union representative; and (2) her union representative withdrew the grievance on her instruction before she filed the formal complaint. Pl.'s Opp'n at 3-4.

The plaintiff's first argument must be rejected because the negotiated agreement between the IRS and the NTEU gives the union explicit authority to file grievances on behalf of union member employees. Def.'s Reply, Ex. 1 §§ 2(A)(2), 3(A). Regardless of whether the plaintiff instructed her union representative to file the grievance, she cannot disassociate herself from the grievance that was filed on her behalf only after she had spoken to the representative. Pl.'s Ex. 4 (Horton Email Chains). The plaintiff cites no case law supporting her claim that the filing of a grievance by a union representative on behalf of a union member does not amount to an irrevocable choice of remedies by the member. See Pl.'s Opp'n at 3-4. And this Court does not agree with the plaintiff's position, and holds that the filing of the grievance by the union representative must be treated as a filing by the complainant herself. This is especially true in light of the IRS and union agreement. To hold otherwise would allow a complainant to circumvent § 1614.301(a) by not holding her accountable for the actions of her union representative, even though the representative acted based on information provided by the complainant.

The plaintiff's second argument is also without merit. The regulation makes no mention of grievances that have been withdrawn, and speaks solely in terms of the filing of grievances,

regardless of what happens thereafter.  29 C.F.R. § 1614.301(a).  The District of Columbia Circuit affirmed a District Court's adoption of an agency's position that the filing of "a union grievance constituted an <u>irrevocable</u> election of remedies" under § 1614.301(a), <u>Guerra</u>, 176 F.3d at 548 (emphasis added), which logically can only mean that withdrawal of a grievance does not abrogate a complainant's earlier choice.  It seems clear that the regulation is designed to prevent forum shopping, and this Court finds no reason to allow access to a second forum after proceedings were initiated earlier on the complainant's behalf in the alternative forum.

Because the plaintiff, through her union representative, made an irrevocable choice of remedies when the union grievance was filed, the defendant was correct to dismiss the plaintiff's administrative complaint.  29 C.F.R. § 1614.107(a)(4).  The plaintiff should have therefore properly exhausted her remedies through the negotiated grievance procedure, and her challenge to the defendant's dismissal must be rejected.

### IV.  Conclusion

For the foregoing reasons, the Court grants the defendant's motion for summary judgment.

**SO ORDERED** this 14th day of June, 2006.

REGGIE B. WALTON<br>United States District Judge